IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KMA HOLDING COMPANY, INC., | ) | |
| an Oklahoma Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-292-C |
| | ) | |
| THE ALAN WAYNE COMPANY, | ) | |
| LLC, a Nevada Limited Liability | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff KMA Holding, Inc. ("KMA") filed the present Motion for Summary Judgment on its breach-of-contract claim against Defendant The Alan Wayne Company ("TAWC") alleging that Defendant failed to pay money owed pursuant to the parties' contract.

I.  BACKGROUND

Danny and Donna Wright ("the Wrights") are the directors, officers, and sole shareholders of Plaintiff KMA.  In March of 2008, Plaintiff KMA and Defendant The Alan Wayne Company ("TAWC") entered into a Consulting Agreement ("Agreement") wherein KMA would provide consulting services to TAWC regarding pre- and post-development real estate issues arising out of an attempted development of a tribal gaming casino.

During the first twenty-five months of the Agreement, KMA's President, Danny Wright, performed every pre-development service that TAWC requested, including verification of the location and depth of sewer, water, gas, and electric utility lines, shooting

grades for surface water drainage from the site, excavation and installation of a septic tank, siting future roads with appropriate drainage, and hauling rock and grader work for site development.  At no point during the initial term of the Agreement did Defendant send Plaintiff notice, pursuant to the requirements of the Agreement, that Plaintiff had failed to adequately perform any service.

Eventually, the parties' venture crumbled when Defendant's assignee, Wichita Wayne, LLC, was unable to secure financing for its gaming facilities.  Thereafter, Defendant failed to pay according to the Agreement, and Plaintiff brought the present action.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Under the summary judgment standard, a mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000).  The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted).  A fact is material if it affects the disposition of the substantive claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986).  A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the

nonmoving party.  <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1225 (10th Cir. 2000).

If a party does not sufficiently support its own asserted facts or address the other party's asserted fact, a court may allow "opportunity to properly support or address the fact . . . consider the fact undisputed for purposes of the motion . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . or issue any other appropriate order."  Fed. R. Civ. P. 56(e).

## III.  DISCUSSION

Defendant does not dispute the validity of the Agreement.  Rather, in response to Plaintiff's Motion, Defendant makes two arguments:  first, that there remain disputed material facts as to the parties' understanding of the Agreement's meaning; second, Defendant argues that the Agreement's performance was rendered impossible due to a failure to obtain financing.  (Def.'s Br., Dkt. No. 40.)

## A.  Contract Interpretation

Pursuant to Oklahoma law,[1] contracts are interpreted "to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."  15 Okla. Stat. § 152.  Construction of an unambiguous contract is a question of law for the Court, which is determined by considering the contract as a whole.  Mortgage Clearing Corp. v. Baughman Lumber Co., 1967 OK 232, 435 P.2d 135, 138.  Whether a contract is ambiguous and requires extrinsic evidence to resolve its ambiguity is also a question of law for the Court.  Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 12, 63 P.3d 541, 545.  "[W]here a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended."  Mercury Inv. Co. v. F.W. Woolworth Co., 1985 OK 38, ¶ 9, 706 P.2d 523, 529.

Defendant contends that the parties had an understanding that Plaintiff would perform no services under this Agreement, and that this Agreement was only entered into to replace a previously failed profit-sharing agreement.  As support for this assertion, Defendant cites

---

[1]  As complete diversity exists between the parties and the requisite amount in controversy is met, this Court has proper subject matter jurisdiction in this case.  28 U.S.C. § 1332.  In diversity actions, federal courts apply the choice-of-law rules of the state in which the court sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 491 (1941); Shearson Lehman Bros., Inc. v. M & L Invs., 10 F.3d 1510, 1514 (10th Cir. 1993).  Under Oklahoma law, contractual choice-of-law provisions are evaluated under the analysis set forth in the Restatement (Second) of Conflict of Laws.  Williams v. Shearson Lehman Bros., Inc., 1995 OK CIV APP 154, ¶ 14, 917 P.2d 998, 1002; Dean Witter Reynolds, Inc. v. Shear, 1990 OK 67, ¶ 1, 796 P.2d 296, 296.  The parties' choice-of-law provision is enforceable, and the parties do not now dispute its applicability; therefore, Oklahoma law governs the substantive issues in this case.  (See Pl.'s Br., Dkt. No. 37, at 7; Def.'s Br., Dkt. No. 40, at 5 (applying Oklahoma law without discussing choice-of-law issue).)

the deposition testimony of Mrs. Wright, where she states that the consulting agreement was "prepared in lieu of the profit sharing to the wordage they could use without being in trouble." (Def.'s Br., Dkt. No. 40 Ex. 2, at 167.)  Mrs. Wright goes on to state that she did not understand the contract to require that KMA provide services to TAWC as a condition precedent to payment.  (Id.)  Dustan Shepherd, WW's manager, agreed that the consulting agreement was another way "to work with the Wrights" despite the failed profit-sharing agreement.  However, contrary to Mrs. Wright, Mr. Shepherd believed that the Wrights would be paid only after consulting services were performed.  (Id. Ex. 7, at 191.)  Defendant argues that this difference of opinion—regarding whether KMA's service was a condition precedent to payment—presents a disputed material fact that precludes summary judgment. Defendant does not dispute that Plaintiff actually performed all requested services under the Agreement.  Nor does Defendant dispute that it did not send Plaintiff written notice of any deficiency regarding Plaintiff's performance.

Defendant's constructed factual dispute does not save it from summary judgment: Defendant concedes that if Plaintiff performed the services pursuant to the Consulting Agreement then it would be entitled to payment.  Accordingly, whether the contract envisions payment when Plaintiff has performed no services is moot in light of the parties' agreement that services were in fact performed.  Even if Defendant's assertion is correct—that there was some unstated purpose for the contract that went against the clear

meaning of the written contractual language—this does not render the language ambiguous.[2] Gamble, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) ("[T]he mere fact that the parties disagree about the meaning of a contract or argue for a different construction does not necessarily make the agreement ambiguous.").

Pursuant to the Agreement, "[i]n consideration of the performance by Consultant of the Services under this Agreement, the Company agrees to pay Consultant a discounted consulting fee of $4,000.00 per month, commencing on or about January 1, 2009, and continuing on the first day of each consecutive month thereafter until June 1, 2011, for an initial term of 30 months, ending on June 30, 2011 (the 'Initial Term')."  (Pl.'s Br., Dkt. No. 37 Ex. 2, at 1.)  This language is not ambiguous.  Giving the words their ordinary and popular meaning, this provision states that the Defendant will pay Plaintiff a monthly fee for a definite time span in consideration for Plaintiff's services, which no one disputes Plaintiff

---

[2] In its Answer, Defendant argues an oral walk away agreement was reached between the parties that extinguished the parties' rights and obligations under the Consulting Agreement. (Ans., Dkt. No. 10, at 4-5.)  As the party asserting modification, however, it is Defendant's burden to show by clear, positive, and convincing proof that an executed oral agreement was reached that modifies the parties' written agreement.  See 15 Okla. Stat. § 237 ("[A] contract in writing may be altered by a contract in writing or by an executed oral agreement, but not otherwise."); QuikTrip Corp. v. Abatement Sys., Inc., 2012 OK CIV APP 54, , ___ P.3d. ___ , ___ 2012 WL 1981716; Dewberry v. Univ. C.I.T. Credit Corp., 1966 OK 77, ¶ 10, 415 P.2d 978, 979.  In its response brief, Defendant fails to respond to Plaintiff's arguments that Libby Wright, the party who allegedly bound Plaintiff to the walk away agreement, had no authority to contractually bind Plaintiff or that Defendant failed to provide consideration for this new agreement.  To the extent that Defendant failed to respond, those facts are deemed admitted.  See LCvR56.1(c) ("All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.").  Accordingly, Defendant has not shown that material issues of fact remain disputed that preclude summary judgment on this issue.

performed. 15 Okla. Stat. § 160. In light of the unambiguous language in the contract,

subsequent parol evidence that "dramatically amends the contract terms" is not permissible.

HBOP, Ltd. v. Delhi Gas Pipeline Corp., 1982 OK CIV APP 11, ¶ 22, 645 P.2d 1042, 1046.

Because the contractual language is unambiguous and no disputed facts remain regarding

Plaintiff's performance of services, Plaintiff is entitled to summary judgment on its breach-

of-contract claim and an award of $100,000.00 damages—payments owed under the initial

term of the contract between January 1, 2009, and January 31, 2011.  S. Corr. Sys., Inc. v.

Union City Pub. Schs., 2002 OK 93, ¶ 14, 64 P.3d 1083, 1088-89 ("If the terms of a contract

are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and

the contract will be enforced to carry out the intention of the parties as it existed at the time

it was negotiated.").

## B.  Impossibility of Performance

As an alternative defense, Defendant argues its nonperformance is excused by the

doctrine of impossibility of performance.  However, at no point before filing its response has

Defendant asserted such a defense:  neither in its Answer nor in the Joint Status Report.

Discovery closed before Plaintiff filed the present Motion, and allowing this last-minute

assertion would seemingly contravene the purposes of Fed. R. Civ. P. 8.  See Canal Ins. Co.

v. Earnshaw, 629 F. Supp. 114, 119 (D. Kan. 1985).  Even if Defendant had timely asserted

this defense, however, it would not be availing.

The doctrine of impossibility of performance serves to justify nonperformance of a

contract when supervening circumstances render a party's performance impracticable or

impossible. Okla. Gas & Elec. Co. v. Pinkerton's Inc., 1986 OK 61, ¶ 7 & n.2, 742 P.2d 546,

547 & n.2.

> "Where, from the nature of the contract, it is evident that the parties contracted on the basis of the continued existence of the person, thing, condition, or state of things, or of facts, to which it relates, the subsequent perishing of the person or thing, or cessation of existence of the condition or state will excuse the performance, or terminate the contract, a condition to that effect being implied, in spite of the fact that the promise may have been unqualified."

Kan., Okla. & Gulf Ry. Co. v. Grand Lake Grain Co., 1967 OK 170, ¶ 18, 434 P.2d 153, 157

(quoting 17A C.J.S. Contracts § 464).   Additionally, "[t]he duty of a promisor is not

discharged by the mere fact that supervening events deprived him of the ability to perform,

if they are not such as to deprive other persons similarly situated of the ability to so perform."

Pinkerton's, 1986 OK 61, ¶ 8, 742 P.2d at 548.  If the promisor had any reason to anticipate

the facts rendering performance impossible, this defense is unavailable.  Grand Lake Grain

Co., 1967 OK 170, ¶ 12, 434 P.2d at 158.

Here, the parties had every reason to anticipate the fact purported to render

performance impossible—Wichita Wayne's failure to obtain the requisite financing.  The

record suggests that the agreement was not grounded on the assumption that Wichita Wayne

would obtain financing.   In fact, even the contractual language signifies the parties'

understanding that pre-development opportunities may, or may not, transition into permanent

ones.  (Pl.'s Br., Dkt. No. 37 Ex. 5, at 4 ("Because pre-development opportunities may

evolve into permanent development projects, . . .  Company agrees to continue its

relationship with Consultant for an additional period of five (5) years to commence if the

permanent development projects come to fruition . . . .").)   Therefore, this argument is unpersuasive.

## IV.  CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (Dkt. No. 37) is GRANTED; a Judgment will enter accordingly.   Plaintiff KMA Holding Company, Inc.'s Motion in Limine to Exclude Defendant's Surprise Exhibits (Dkt. No. 44) is MOOT.

IT IS SO ORDERED this 6th day of July, 2012.

ROBIN J. CAUTHRON
United States District Judge